**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MARIA HAYDEN,

Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

Defendants.

Case No.: 1:26-cv-01176

Judge Manish S. Shah

Magistrate Judge Gabriel A. Fuentes

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR LEAVE TO SERVE CERTAIN DEFENDANTS BY ELECTRONIC MEANS

## I. INTRODUCTION

Plaintiff Maria Hayden asks the Court to authorize service by electronic means, under Federal Rule of Civil Procedure 4(f)(3), on ten Schedule A defendants (the "Defaulting Defendants") for whom no address at which service could be effected can be ascertained. Plaintiff makes that showing here defendant by defendant, on a record that includes verbatim capture of each Defendant's self-disclosed address, independent map resolution on three separate platforms including two that operate reliably inside China, and a Chinese corporate registry search on each Defendant's own disclosed business name. Jiang Decl. ¶6(a)-(c).

Plaintiff does not seek this relief against every Schedule A defendant. Plaintiff seeks it only against ten Defendants, Nos. 1, 2, 5, 6, 7, 11, 15, 47, 54, and 59. Defendant No. 51 is deliberately excluded: its disclosed address was verified against the Chinese corporate registry and resolves to identifiable premises, so Plaintiff treats that Defendant's address as known and has submitted a request for service through the Central Authority of the People's Republic of China. Vogt Decl. ¶4; Jiang Decl. ¶4.

On September 1, 2026, Plaintiff filed a status report [31] stating that Plaintiff had begun investigating defendants' addresses in light of *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co.*, 177 F.4th 793 (7th Cir. 2026). On September 4, 2026, the Court entered a minute order [32] noting that "if plaintiff did not conduct a reasonably diligent search for defendants' addresses before 2/11/26, the court's order authorizing electronic service of process was likely in error and researching the addresses now would not retroactively authorize service." Plaintiff therefore renews the request for electronic service of the Defaulting Defendants as follows:

Plaintiff's prior February request rested on authority addressing the general propriety of email service under Rule 4(f)(3), not on an investigation of any individual defendant's disclosed address. *See, e.g., Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002); *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 1:08-cv-02593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008). Since the February request predates *Kangol*, Plaintiff does not ask this Court to find that the February showing was adequate, and does not ask the Court to treat the per-defendant investigation described below as retroactively curing it. Plaintiff instead asks the Court to make the Article 1 finding *Kangol* requires on a fresh record, built and presented now, and to authorize service prospectively on that record.

Plaintiff does not rely on timing to excuse any deficiency in the February motion. The point is narrower. When the Court entered its February order [16], *NBA Properties* had required a plaintiff seeking to treat a foreign defendant's address as "not known" under Article 1 of the Hague Service Convention to make reasonably diligent efforts to ascertain and verify that address. *NBA Props., Inc. v. Partnerships & Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021). But *Kangol* was not decided until May 29, 2026. Thus, at the time of Plaintiff's motion, no Seventh Circuit decision had yet applied that Article 1

inquiry in the Schedule A context or held that, if the Convention applies, email service on defendants in China is prohibited. Plaintiff raises this only to explain why the February motion was not built to a standard that did not yet carry appellate confirmation in this Circuit, not to excuse the absence of the individualized showing *NBA Properties* already called for at the time.

## II. PROCEDURAL BACKGROUND

Plaintiff filed this action on February 3, 2026 [1], identifying the defendants on Schedule A [2]. On February 11, 2026, the Court granted Plaintiff's ex parte motion and entered its Order for Leave to Conduct Expedited Discovery and Service of Process by E-Mail and/or Electronic Publication [16]. Summonses issued February 13, 2026 [18]. Plaintiff filed proof of service on February 25, 2026 [19]; responsive pleadings were due March 18, 2026.

Plaintiff has since dismissed 188 of the 199 Schedule A defendants. *See* [20], [21], [22], and [25]. Eleven defendants remain: the ten Defaulting Defendants that are the subject of this motion, and Defendant No. 51, which is on the Hague Convention track described above.

On August 18, 2026, the Court entered minute order [24], setting a status report deadline of September 1, 2026, and requiring Plaintiff to list all defendants not dismissed and explain what steps Plaintiff was taking to advance the case. Plaintiff filed that status report on September 1, 2026 [31], listing the eleven remaining defendants and stating that Plaintiff had begun investigating addresses in light of *Kangol*. On September 4, 2026, the Court entered the minute order [32], setting the next status report for September 15, 2026. This motion and an accompanying status report are filed together in response to [32].

None of the ten Defaulting Defendants has ever answered, appeared, moved, or otherwise responded to the Complaint. Vogt Decl. ¶2.

## III. THE DILIGENCE STANDARD AFTER *KANGOL*

Rule 4(f)(3) permits service abroad "by other means not prohibited by international agreement, as the court orders." In *Kangol*, the Seventh Circuit held that where the Hague Service Convention applies it "sets out the permitted methods of service and excludes all others," and that because China has objected to Article 10, "the Hague Service Convention prohibits service by email in China." 177 F.4th at 800, 801-02.

But the Convention's reach is not automatic. Article 1 provides that the Convention "shall apply in all cases ... where there is occasion to transmit a judicial or extrajudicial document for service abroad," and "shall not apply where the address of the person to be served with the document is not known." Hague Service Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361, 362, T.I.A.S. No. 6638. *Kangol* treated that as the threshold question, described the plaintiff's Article 1 argument there as its "more legitimate contention," and expressly declined to resolve it: "The district court didn't resolve whether Kangol's efforts to determine Hangzhou's address were reasonably diligent, such that Hangzhou's address wasn't known. ... Therefore, the district court must resolve whether the Convention applies on remand." 177 F.4th at 799. *Kangol* announced no diligence holding of its own; the question it remanded is the question presented here.

District courts in this Circuit "typically require plaintiffs to make 'reasonably diligent efforts to ascertain and verify [the] defendant's mailing address' before deeming the defendant's address unknown." *Kangol*, 177 F.4th at 799 (quoting *NBA Props.*, 549 F. Supp. 3d at 796).

Three features of that standard matter here. First, diligence is measured by breadth. It "generally requires that the plaintiff ha[ve] attempted to obtain [the defendant's] address in a variety of ways." *Peanuts Worldwide LLC v. Partnerships & Unincorporated Ass'ns Identified on Schedule "A"*, 347 F.R.D. 316, 328 (N.D. Ill. 2024) (citation omitted). A single failed search

will not do. In *Peanuts*, the plaintiff's showing was that counsel could not locate the address on Google Maps, and the court rejected it because "Google's search products do not consistently work in China," a defect the defendant exposed by producing Baidu and Bing results for the same address. *Id.*

Second, the inquiry is directed at whether an address is usable for service, not at whether a string of characters exists somewhere. The question is whether the plaintiff investigated the available physical addresses to see if they were valid for service. *See NBA Props.*, 549 F. Supp. 3d at 796 (citing *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018), for the proposition that a "plaintiff who investigated the available physical addresses of online merchant to see if they were valid for service and determined they were not conducted reasonable diligence"). *Shen* itself found diligence where the plaintiff "conducted an investigation into the physical addresses used by [the defendant] ... in an attempt to determine whether these addresses were valid for service of process," and rejected the argument that a plaintiff must attempt Convention service anyway at an address it has determined would not work. 2018 WL 4757939, at *4-*5.

Third, where a candidate address does resolve to real premises, a plaintiff should take "the next reasonable step of actually investigating those addresses – by sending a test mailing or an on-foot investigator, for example – to determine whether any corresponded to [the defendant]'s mailing address." *Li v. Individuals, Partnerships & Unincorporated Ass'ns Identified on Schedule A*, No. 1:26-cv-03970, Dkt. 63 (N.D. Ill. Aug. 11, 2026) (minute entry) (Rowland, J.). That step is meaningful only where there is a location to visit. Where the investigation establishes that no candidate address identifies premises at all, there is nothing to which a mailing or a visit could be directed.

Plaintiff acknowledges that *NBA Properties* found the diligence before it insufficient, but the conclusion turned on the absence of any case-specific diligence: the plaintiffs there "d[id] not claim that they conducted any diligence to verify the address Defendant posted on Amazon" and "d[id] not even claim that they found that address before [they] asked the Court to allow for alternative means of service." *NBA Props.*, 549 F. Supp. 3d at 796. This record is materially different.

## IV. PLAINTIFF'S INVESTIGATION AND ITS APPLICATION TO THE TEN DEFAULTING DEFENDANTS

Plaintiff's investigation is described in the Declaration of Yanling Jiang, co-counsel for Plaintiff, who reads and writes Chinese and who ran the registry and mapping searches in Chinese characters herself, and it is documented defendant by defendant in Exhibit A to that declaration. Jiang Decl. ¶3. In summary, for each Defendant, Plaintiff (i) captured the business name and business address that the Defendant itself disclosed on its live seller profile, verbatim and in the original characters, and preserved the profile page; (ii) attempted to resolve that address on three independent mapping platforms, Google Maps, Baidu Maps, and Amap, the latter two of which operate reliably within China, running the queries in Chinese characters; (iii) searched the Chinese corporate registry through Tianyancha using the Defendant's own verbatim disclosed business name as the search term; (iv) where a registered entity was returned, compared its registered address against the disclosed address and pulled its registration status, legal representative, unified social credit code, and any 经营异常 abnormal-operation listings; and (v) recorded the result, including results adverse to Plaintiff. Jiang Decl. ¶6(a)-(d).

That investigation answers the specific defect identified in *Peanuts*. Plaintiff did not rely on Google alone. Plaintiff ran two Chinese-market mapping services in Chinese characters, and it ran an independent registry check on top of them. That investigation was conducted August 20,

21, and 24, 2026, and is addressed as a fresh, standalone record, not as a supplement to Plaintiff's February motion. Jiang Decl. ¶7.

The results divide the ten Defendants into three groups. Exhibit A sets out the full showing for each.

1. **Four Defendants for whom no address can be ascertained at all.**

For Defendants 2, 5, 6, and 7, the investigation did not merely fail to confirm the disclosed address; it affirmatively established that no address for the Defendant can be ascertained at all. As to Defendants 2, 5, and 7 the registry resolved the Defendant's own disclosed business name to a single entity registered in a different province from the address disclosed; and as to Defendant 6 the registry returned no entity at all for the verbatim disclosed name. Ex. A, Defs. Nos. 2, 5, 6, 7. Exhibit A sets out the disclosed address, the registry return, and the map result for each of these four Defendants. For these four there is no location to which a test mailing or an on-foot visit could be directed, and *Li* does not suggest otherwise.

2. **Five Defendants whose disclosed address string does not identify premises where service can be effected.**

For Defendants 11, 15, 47, and 54, the registry returned a match whose registered address corresponds to the disclosed string, and for Defendant 59 it returned a match whose registered address supplies the street, compound, building, and unit that the platform disclosure omits. Jiang Decl. ¶9; Ex. A, Defs. Nos. 11, 15, 47, 54, 59. Neither type of return establishes that these Defendants' addresses are "known" within the meaning of Article 1, because the question Article 1 poses is whether there is an address at which the person to be served can be served, which is the inquiry *NBA Properties* and *Shen* describe: whether the available physical addresses are "valid for service." *NBA Props.*, 549 F. Supp. 3d at 796. Two of these Defendants disclose rural village designations with no road and no street number, one discloses a floor and two unit

numbers with no building designation inside a complex of separately named towers, one has had its business license revoked and appears twice on the abnormal-operation list with no removal recorded, and one discloses nothing beyond a district and a city, leaving as the only precise address in the record a residential apartment that the registrant filed under a self-declared residence registration (住所申报) and that the registry carries on the abnormal-operation list. Ex. A, Defs. Nos. 11, 54 (village designations); *id.*, Def. No. 15 (floor and unit numbers); *id.*, Def. No. 47 (revoked license); *id.*, Def. No. 59 (district-level disclosure; self-declared residence). Exhibit A states, as to each, the verbatim disclosed string, the registry return, and why the string does not identify premises at which service could be effected.

**3. One Defendant whose registered address is a cluster-style registration in a shared commercial tower.**

For Defendant No. 1, the verbatim disclosed business name returned a single registered entity, which is active, carries no abnormal-operation listing, and whose registered address corresponds to the disclosed address character for character. That address resolves on the map to real and locatable premises: a SOHO tower within the Mianyang Jingkai Wanda Plaza complex. Jiang Decl. ¶9; Ex. A, Def. No. 1.

The address nonetheless does not identify premises at which this Defendant can be served. It designates a floor and two room numbers within a commercial tower whose listed occupants are unrelated law firms and retail businesses, and it carries the trailing serial "-Z1804," which is an assigned registration serial rather than any part of a postal address. A registration of that form identifies where a registrant filed, not where it can be found. Plaintiff does not represent that the registry itself labels the address as a virtual office. The registry lists the address and nothing further, and Plaintiff's conclusion that it is a cluster-style registration follows from the address's structure and surrounding indicia.

**4. One Defendant whom Plaintiff will serve under the Hague Convention.**

Defendant No. 51's address was verified and resolves to identifiable premises, so Plaintiff treats its address as known and is pursuing Hague Convention service rather than the relief sought here. Vogt Decl. ¶4. The Article 1 inquiry is defendant-specific, and Plaintiff has applied it defendant by defendant rather than seeking uniform treatment for a group.

## V. REQUESTED RELIEF

Because the Court's minute order [32] specifically warns against treating diligence conducted now as retroactively authorizing service already completed, Plaintiff does not ask for that. Plaintiff asks the Court to make the Article 1 finding on the record set out above, as of today, and to authorize service on that basis going forward.

Plaintiff asks the Court to find that no address is known at which any of the ten Defaulting Defendants can be served, within the meaning of Article 1 of the Hague Service Convention; to authorize service on each by the same electronic means directed in the Court's order [16]; and to direct Plaintiff to re-transmit notice to each Defendant within seven days of entry of the order and to file proof of that re-transmission. Vogt Decl. ¶5. Responsive pleadings would be due twenty-one days after re-transmission, consistent with Rule 12(a)(1)(A)(i). Under this structure each Defaulting Defendant receives a fresh notice and a fresh deadline running only from an order supported by the present record, which forecloses any argument that the order gives retroactive effect to the February showing.

Plaintiff recognizes the Court could instead make the same Article 1 finding and treat the service reflected in the proof of service filed February 25, 2026 [19] as satisfying the order. Plaintiff does not request that form, because it asks the Court to let a completed act satisfy an order entered afterward, but would proceed under it if the Court so directed.

## VI. CONCLUSION

Plaintiff respectfully requests that the Court grant this motion and enter the accompanying proposed order.

DATED: September 15, 2026

Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt
FL Bar No. 1036084 / IL Bar No. 6207971
Keith A. Vogt PLLC
1820 NE 163rd Street, Suite #306
North Miami Beach, Florida 33162
Telephone: 312-971-6752
E-mail: keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***